UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| VICTOR C. ANDERSON, | : | |
|     Plaintiff, | : | CASE NO. 3:18-cv-1107 (MPS) |
| | : | |
| v. | : | |
| | : | |
| ANGEL QUIROS, et al. | : | |
|     Defendants. | : | July 13, 2018 |

**INITIAL REVIEW ORDER**

On July 2, 2018, the plaintiff, Victor C. Anderson, an inmate currently confined at the MacDougall-Walker Correctional Institution ("MWCI") in Suffield, Connecticut, brought a civil action *pro se* under 42 U.S.C. § 1983 against five employees of the Connecticut Department of Correction for violating his constitutional rights. Compl. (ECF No. 1). The five defendants are District Administrator Angel Quiros, Lieutenant Chevalur, Correction Officer Bennett, Disciplinary Hearing Officer John Doe 1, and Disciplinary Investigator John Doe 2. The plaintiff is suing all five defendants for damages.[1] On July 12, 2018, this Court granted the plaintiff's motion to proceed *in forma pauperis* (ECF No. 7). For the following reasons, the complaint is dismissed without prejudice to amend.

---

[1] The plaintiff does not specify whether he is suing the defendants in their individual or official capacities. However, the Eleventh Amendment bars claims for damages against state officials in their official capacities. *See Kentucky v. Graham*, 473 U.S. 159 (1985); *Quern v. Jordan*, 440 U.S. 332, 342 (1979). Therefore, the plaintiff may only obtain relief against the defendants in their individual capacities.

I.  Standard of Review

Under 28 U.S.C. § 1915A, the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief.  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007).  Conclusory allegations are not sufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic*, 550 U.S. at 570.  Nevertheless, it is well-established that "[p]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"  *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

II.  Factual Allegations

Around 7:00 p.m. on December 17, 2017, the plaintiff exited his cell and entered the kitchenette area at MWCI to make a cup of coffee.  Compl. ¶ 1.  While standing in the kitchenette, another inmate asked the plaintiff to leave the area so that he could cut a third inmate's hair.  *Id.* at ¶ 2.  He also asked the plaintiff to watch Correction Officer Bennett.  *Id.*  The plaintiff agreed and moved to a nearby railing to chat with another inmate named David Kent.  *Id.* at ¶ 3.  There, the plaintiff had a direct view of Bennett in the television room.  *Id.*

While chatting with Kent, the plaintiff discreetly watched Bennett, who was in the nearby television room watching a sports game and socializing with inmates. Compl. ¶ 4. The plaintiff told the inmate in the kitchenette what Bennett was doing and that he could proceed with the haircut. *Id.* at ¶ 5.

As he continued to watch Bennett and chat with Kent, another inmate named Jose Vazquez sneaked up behind the plaintiff and punched him in the back of his leg. Compl. ¶ 6. The strike caused the plaintiff to twist and fall to the ground, spilling the cup of coffee he was holding. *Id.* at ¶ 7. The plaintiff then took three steps while holding onto the railing and threw the remainder of his coffee at Vazquez. *Id.* at ¶ 8. Afterward, the plaintiff looked toward the television room and noticed Bennett looking at him "with a confused look on his face." *Id.* at ¶ 9. Bennett came out of the television room as the plaintiff began walking back up to his cell. *Id.* at ¶ 10. Bennett saw Vazquez covered in coffee and proceeded to lock down the block. *Id.* Shortly thereafter, several correctional officials apprehended the plaintiff and brought him to a restrictive housing unit ("RHU") for assaulting Vazquez. *Id.* at ¶ 11.

On January 11, 2018, correction officials called the plaintiff for a disciplinary hearing on the incident with Vazquez. Compl. ¶ 12. The plaintiff had not been given prior notice of the hearing. *Id.* When he responded to the call, the plaintiff learned from Officer Doe 1 that the video from the incident had not yet been reviewed. *Id.* The plaintiff told Doe 1 that inmate Kent could testify as a witness on his behalf, but Doe 1 did not take note of Kent's name. *Id.* at ¶ 13. Doe 1 suspended the disciplinary hearing for one week to allow time to review the video from the incident. *Id.* at ¶ 14.

One week later, Doe 1 called the plaintiff and resumed the hearing.  Compl. ¶ 15.  He informed the plaintiff that the area where he had been standing when Vazquez allegedly punched him was a "dead zone," meaning that it was out of the view of the security cameras.  *Id.* at ¶ 16.  Thus, the camera did not capture Vazquez's assault on the plaintiff.  *Id.*  The plaintiff expressed concern that there were "dead zones" in a "medium/high level facility" like MWCI.  *Id.* at ¶ 17.  He also asked about producing Kent as a witness to the incident.  *Id.*  Doe 1 told him that "it is not worth the time to speak with the witness" and then found him guilty of assaulting Vazquez.  *Id.* at ¶ 18.

The plaintiff appealed the disciplinary finding on January 22, 2018.  Compl. ¶ 19.  He received a response from District Administrator Quiros affirming the finding.  *Id.*  Quiros did not speak with the plaintiff's witness.  *Id.*

To date, the plaintiff suffers from ongoing medical issues from the incident with Vazquez, including sciatic nerve damage and pain in his hip and knee.  Compl. ¶ 20.  He experiences pain when he walks long distances or stands for long durations.  *Id.*

III.  Analysis

The plaintiff does not specify which constitutional rights he claims the defendants violated.  Based on the Court's reading of the allegations, the only conceivable claims the plaintiff could raise in this instance would be an Eighth Amendment claim against Bennett for failing to protect him from the assault by Vazquez and a Fourteenth Amendment procedural due process claim against Doe 1 for failing to investigate the incident with Vazquez or to permit the plaintiff an opportunity to present Kent as a witness.

A. Failure to Protect

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of . . . inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). "[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal quotations omitted). However, not every injury suffered by one prisoner from another prisoner establishes constitutional liability on the part of the prison official. *Id.* at 834.

A prison official violates the prisoner's Eighth Amendment protection against cruel and unusual punishment only when the following two requirements are satisfied. First, the prisoner must prove that the deprivation was "objectively, sufficiently serious . . . ." *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). If the claim is based on the official's failure to prevent harm, the plaintiff must prove that he is "incarcerated under conditions posing a substantial risk of serious harm." *Id.* To determine whether the prisoner faced an excessive risk of serious harm, courts "look at the facts and circumstances of which the official was aware at the time [s]he acted or failed to act." *Hartry v. County of Suffolk*, 755 F. Supp. 2d 422, 436 (E.D.N.Y. 2010) (internal quotations and citation omitted). Secondly, the prisoner must prove that the prison official acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 302-03). This requirement is based on the principle that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Id.* (quoting *Wilson*, 501 U.S. at 297). The prison official must have disregarded an excessive risk to the prisoner's health or safety. *See id.* at 837. Whether an official had

knowledge of a substantial risk of harm is a question of fact "subject to demonstration in the usual ways, including inference from circumstantial evidence." *Id.* at 842.

To the extent the plaintiff is attempting to state an Eighth Amendment claim against Bennett for failing to protect him from the assault by Vazquez, his claim fails under the subjective prong. He has not alleged facts showing that Bennett knew that the plaintiff faced a substantial risk of harm from Vazquez. At most, he has alleged that Bennett was negligent in supervising the inmates in the area where the assault occurred, which is insufficient to establish an Eighth Amendment violation. *See James v. Orange County Correctional Facility*, No. 09 Civ. 7226 (CM), 2011 WL 5834855, *8 (S.D.N.Y. Nov. 18, 2011) (negligence of prison official insufficient to establish required state of mind for Eighth Amendment failure to protect claim). Therefore, any Eighth Amendment claim for failure to protect the plaintiff from harm cannot proceed on the alleged facts.

B. Procedural Due Process

The standard analysis for a claim of a violation of procedural due process "proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*). In the prison context (involving someone whose liberty interests have already been severely restricted because of his or her confinement in a prison), a prisoner must show that he was subject to an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In *Sandin*, the Supreme Court concluded that a prisoner who was subject to a disciplinary

term of thirty days confinement in restrictive housing did not sustain a deprivation of a liberty interest that was subject to protection under the Due Process Clause. *Id.* at 486. Following *Sandin*, the Second Circuit has explained that courts must examine the actual punishment received, as well as the conditions and duration of the punishment. *See Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004).

As to the second step of the analysis, the procedural safeguards to which the prisoner is entitled before being deprived of a constitutionally significant liberty interest are well-established. These requirements include: (1) written notice of the charges; (2) the opportunity to appear at a disciplinary hearing and a reasonable opportunity to present witnesses and evidence in support of the defense, subject to the correctional institution's legitimate safety and penological concerns; (3) a written statement by the hearing officer explaining his decision and the reasons for the action being taken; and (4) in some circumstances, the right to assistance in preparing a defense. *See Wolff v. McDonnell*, 418 U.S. 539, 564–69 (1974); *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004).

In this case, the plaintiff has alleged that Doe 1 called him for his disciplinary hearing without prior notice and would not allow him to call Kent as a witness to the incident. Although these allegations support the second component of a due process challenge, the plaintiff has not alleged what specific sanctions, if any, he received as a result of the guilty finding. He alleges that he was placed in RHU immediately following the incident, but he does not allege how long he remained in the RHU or whether he received any additional sanctions following the guilty finding. Thus, the Court cannot discern whether the plaintiff was deprived of a liberty interest that constituted an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life."

*Sandin*, 515 U.S. at 484. For this reason, the plaintiff has not sufficiently stated a due process claim against Doe 1.

    C.  <u>Claims Against Other Defendants</u>

As far as the other defendants are concerned, the plaintiff has not sufficiently alleged their personal involvement in the deprivation of his constitutional rights. "It is well settled . . . that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks omitted); *see also Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir. 1973) (doctrine of *respondeat superior* does not suffice for claim of monetary damages under § 1983). A plaintiff who sues a supervisory official for monetary damages must allege that the official was "personally involved" in the constitutional deprivation in one of five ways: (1) the official directly participated in the deprivation; (2) the official learned about the deprivation through a report or appeal and failed to remedy the wrong; (3) the official created or perpetuated a policy or custom under which unconstitutional practices occurred; (4) the official was grossly negligent in managing subordinates who caused the unlawful condition or event; or (5) the official failed to take action in response to information regarding the unconstitutional conduct. *Wright*, 21 F.3d at 501.

The only allegation the plaintiff makes against Quiros is that he denied his appeal from the disciplinary finding. This allegation, alone, does not establish Quiros' involvement in the deprivation of a constitutional right. *See Manley v. Mazzuca*, No. 01-CV-5178 (KMK), 2007 WL 162476, at *10 (S.D.N.Y. Jan. 19, 2007) ("[A]ffirming the administrative denial of a prison inmate's grievance by a high-level official is insufficient

to establish personal involvement under section 1983"); *see also Jusino v. Mark Frayne*, No. 3:16-CV-961 (MPS), 2016 WL 4099036, at *5 (D. Conn. Aug. 2, 2016) (denial of grievance alone does not establish personal involvement of supervisory official). There are no allegations that Bennett had any involvement in the disciplinary proceedings that followed the incident, and Chevalur and Doe 2 are not even mentioned in the statement of facts. Based on the foregoing, the plaintiff has not stated plausible claims against any of these defendants.

## ORDERS

The complaint is hereby dismissed without prejudice for failure to state a claim upon which relief could be granted. The clerk is directed to close this case. If the plaintiff wishes to continue pursuing this action, he may, within **thirty (30) days of the date of this order**, file a motion to reopen the case and attach an amended complaint that cures the factual deficiencies of the Eighth and Fourteenth Amendment claims as explained above. The plaintiff must also plead facts showing that he exhausted his administrative remedies before commencing this action. **Failure to file a motion to reopen and attach an amended complaint that complies with these instructions within thirty (30) days of the date of this order will result in the dismissal of this case with prejudice.**

It is so ordered.

Dated at Hartford, Connecticut this 17th day of July 2018.

                                                          /s/
                                               Michael P. Shea
                                               United States District Judge