UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| VICTOR C. ANDERSON, | : | |
|     Plaintiff, | : | CASE NO. 3:18-cv-1107 (MPS) |
| | : | |
| v. | : | |
| | : | |
| ANGEL QUIROS, et al. | : | |
|     Defendants. | : | August 2, 2018 |

**REVIEW OF AMENDED COMPLAINT**

On July 2, 2018, the plaintiff, Victor C. Anderson, an inmate currently confined at the MacDougall-Walker Correctional Institution ("MWCI") in Suffield, Connecticut, brought a civil action *pro se* under 42 U.S.C. § 1983 for damages against five employees of the Connecticut Department of Correction: District Administrator Angel Quiros, Lieutenant Chevalur, Correction Officer Bennett, Disciplinary Hearing Officer John Doe 1, and Disciplinary Investigator John Doe 2. Compl. (ECF No. 1). The complaint asserted a claim against Bennett under the Eighth Amendment for failing to protect the plaintiff from harm and a claim against Doe 1 and Quiros under the Fourteenth Amendment for violating his right to procedural due process. *See id.* at 4. The Court dismissed the complaint without prejudice for failure to state a plausible claim under 28 U.S.C. § 1915A against any of the defendants. Initial Review Order (ECF No. 8). However, the Court permitted the plaintiff one opportunity to file an amended complaint that cured the factual deficiencies of the Eighth and Fourteenth Amendment claims as explained in its Initial Review Order. *Id.* at 9.

On July 26, 2018, the plaintiff filed an amended complaint against Bennett, Doe 1, and Quiros.[1] Am. Compl. (ECF No. 9). However, as shown below, the allegations in his amended complaint still fail to state plausible claims under the Eighth or Fourteenth Amendments. Therefore, the Court will dismiss the amended complaint.

I.  Standard of Review

Under 28 U.S.C. § 1915A, the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 550 U.S. at 570. Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

---

[1] The plaintiff apparently has withdrawn his claims against Chevalur and Doe 2. Am. Compl. (ECF No. 9) at 1.

II.     Amended Factual Allegations

Around 7:00 p.m. on December 17, 2017, the plaintiff exited his cell and entered the kitchenette area at MWCI to make a cup of coffee. Am. Compl. ¶ 1. While standing in the kitchenette, another inmate asked the plaintiff to leave the area so that he could cut another inmate's hair. *Id.* at ¶ 2. He also asked the plaintiff to watch Correction Officer Bennett. *Id.* The plaintiff agreed and moved to a nearby railing to chat with another inmate named David Kent. *Id.* at ¶ 3. There, the plaintiff had a direct view of Bennett in the television room. *Id.*

While chatting with Kent, the plaintiff discreetly watched Bennett, who was in the nearby television room watching a sporting event and socializing with inmates. Am. Compl. ¶ 4. The plaintiff told the inmate in the kitchenette what Bennett was doing and that he could proceed with the haircut. *Id.* at ¶ 5.

As he continued to watch Bennett and chat with Kent, another inmate named Jose Vazquez approached the plaintiff from behind and punched him in the back of his leg. Am. Compl. ¶ 6. The strike caused the plaintiff to twist and fall to the ground in pain, spilling the cup of coffee he was holding. *Id.* at ¶ 7. The plaintiff then took three steps while holding onto the railing and threw the remainder of his coffee at Vazquez. *Id.* at ¶ 8. Afterward, the plaintiff looked toward the television room and noticed Bennett looking at him "with a confused look on his face." *Id.* at ¶ 9. Bennett came out of the television room as the plaintiff began walking back up to his cell. *Id.* at ¶ 10. Bennett saw Vazquez covered in coffee and proceeded to lock down the block. *Id.* Shortly thereafter, several correctional officials apprehended the plaintiff and brought him to a

restrictive housing unit ("RHU") for assaulting Vazquez. *Id.* at ¶ 11. The plaintiff remained in the RHU for twenty-three days without a hearing. *Id.*

On January 11, 2018, correction officials called the plaintiff for a disciplinary hearing on the incident with Vazquez. Am. Compl. ¶ 12. The plaintiff had not been given prior notice of the hearing. *Id.* When he responded to the call, the plaintiff learned from Officer Doe 1 that the video from the incident had not yet been reviewed. *Id.* The plaintiff told Doe 1 that inmate Kent could testify as a witness on his behalf, but Doe 1 did not take note of Kent's name. *Id.* at ¶ 13. Doe 1 suspended the disciplinary hearing for one week to allow time to review the video from the incident. *Id.* at ¶ 14.

One week later, Doe 1 called the plaintiff and resumed the hearing. Am. Compl. ¶ 15. He informed the plaintiff that there was no surveillance footage of the area where Vazquez allegedly had assaulted him because it was out of the view of the security cameras. *Id.* at ¶ 16. The plaintiff expressed concern over how there could be areas that were not surveilled in a high-level facility like MWCI. *Id.* at ¶ 17. He also asked about producing Kent as a witness to the incident. *Id.* Doe 1 told him that "it is not worth his time to speak with the witness" and that he should not worry about the missing camera footage. *Id.* at ¶ 18. Doe 1 then found the plaintiff guilty of assaulting Vazquez and "imposed sanctions."[2] *Id.* at ¶ 19.

The plaintiff appealed the disciplinary finding on January 22, 2018. Am. Compl. ¶ 20. He received a response from District Administrator Quiros affirming the finding. *Id.* Quiros did not speak with the plaintiff's witness. *Id.*

---

[2] The plaintiff asserts that he is still "waiting for copies of the sanctions." Am. Compl. ¶ 19.

4

To date, the plaintiff suffers from ongoing medical issues from the incident with Vazquez, including a pronounced limp. Am. Compl. ¶ 21. He has since been provided with a bottom bunk pass for his condition. *Id.*

III. Analysis

The plaintiff is attempting to state a claim that Bennett failed to protect him from the assault by Vazquez, in violation of his Eighth Amendment right against cruel and unusual punishment. Am. Compl. at 10. He argues that, had Bennett been stationed at his post instead of watching television and socializing with other inmates, he could have prevented the assault. *Id.* He is suing Doe 1 and Quiros for violating his right to procedural due process under the Fourteenth Amendment because they failed to (1) provide him with proper notice of his disciplinary hearing, (2) present evidence at the hearing, and (3) permit him the opportunity to call Kent as a witness on his behalf. *Id.* These claims are essentially the same as those set forth in the initial complaint and fail for the same reasons stated in the Initial Review Order.

A. Failure to Protect

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of . . . inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). "[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal quotations omitted). However, not every injury suffered by one prisoner at the hands of others establishes constitutional liability on the part of the prison official. *Id.* at 834.

A prison official violates the prisoner's Eighth Amendment protection against cruel and unusual punishment only when the following two requirements are satisfied.

First, the prisoner must prove that the deprivation was "objectively, sufficiently serious . . . ." *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). If the claim is based on the official's failure to prevent harm, the plaintiff must prove that he is "incarcerated under conditions posing a substantial risk of serious harm." *Id.* To determine whether the prisoner faced an excessive risk of serious harm, courts "look at the facts and circumstances of which the official was aware at the time [s]he acted or failed to act." *Hartry v. County of Suffolk*, 755 F. Supp. 2d 422, 436 (E.D.N.Y. 2010) (internal quotations and citation omitted). Secondly, the prisoner must prove that the prison official acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 302-03). This requirement is based on the principle that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Id.* (quoting *Wilson*, 501 U.S. at 297). The prison official must have disregarded an excessive risk to the prisoner's health or safety. *See id.* at 837. Whether an official had knowledge of a substantial risk of harm is a question of fact "subject to demonstration in the usual ways, including inference from circumstantial evidence." *Id.* at 842.

As the Court ruled in its Initial Review Order, the plaintiff cannot state an Eighth Amendment claim against Bennett for failing to protect him from harm simply by alleging facts showing that he acted negligently in supervising the inmates in the area. *See* Initial Review Order at 6 (citing *James v. Orange County Correctional Facility*, No. 09 Civ. 7226 (CM), 2011 WL 5834855, *8 (S.D.N.Y. Nov. 18, 2011) (negligence of prison official insufficient to establish required state of mind for Eighth Amendment failure to protect claim)). Even if the plaintiff is correct in his assessment that Bennett could have prevented the assault had he not been watching television and socializing at

the time, this argument, at most, shows that Bennett was negligent in supervising the inmates in the dayroom. There are no allegations showing Bennett's knowledge that the plaintiff faced a substantial risk of harm. Therefore, the plaintiff's amended complaint fails to state a plausible Eighth Amendment claim.

B. <u>Procedural Due Process</u>

The standard analysis for a claim of a violation of procedural due process "proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*). In the prison context, where liberty interests are already severely restricted by law, a prisoner must show that he was subject to an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In *Sandin*, the Supreme Court concluded that a prisoner who was subject to a disciplinary term of thirty days confinement in restrictive housing did not sustain a deprivation of a liberty interest that was subject to protection under the Due Process Clause. *Id.* at 486. Following *Sandin*, the Second Circuit has explained that courts must examine the actual punishment received, as well as the conditions and duration of the punishment. *See Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004).

As to the second step of the analysis, the procedural safeguards to which the prisoner is entitled before being deprived of a constitutionally significant liberty interest are well-established. These requirements include: (1) written notice of the charges; (2) the opportunity to appear at a disciplinary hearing and a reasonable opportunity to present witnesses and evidence in support of the defense, subject to the correctional institution's

legitimate safety and penological concerns; (3) a written statement by the hearing officer explaining his decision and the reasons for the action being taken; and (4) in some circumstances, the right to assistance in preparing a defense. *See Wolff v. McDonnell*, 418 U.S. 539, 564–69 (1974); *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004).

The Court previously dismissed the plaintiff's procedural due process claim because, although he had alleged that he was deprived of multiple procedural safeguards, he had not alleged what specific sanctions, if any, he received as a result of the guilty finding from the assault. Initial Review Order at 7. In his amended complaint, the plaintiff alleges that he was placed in RHU for twenty-three days prior to the disciplinary hearing and that Doe 1 "imposed sanctions." Am. Compl. ¶¶ 11, 19. He then asserts that he is still "waiting for copies of the sanctions." *Id.* at ¶ 19. These allegations do not show that the plaintiff was subject to an "atypical and significant hardship" under *Sandin*. The plaintiff was confined in the RHU for a shorter period of time than the thirty days to which the claimant in *Sandin* was subjected, and the *Sandin* Court held that even thirty days confinement in RHU was insufficient to show an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." 515 U.S. at 484. The plaintiff has not alleged that he was subject to any harsh conditions while in the RHU and, in fact, has made no allegations about the conditions in the RHU. His contention that he is still waiting for "copies" of the additional sanctions imposed in January of 2018 suggests that any additional sanctions he received were minor and did not create an "atypical and significant hardship." Therefore, the plaintiff's Fourteenth Amendment claim remains implausible.

## ORDERS

The amended complaint (ECF No. 9) is hereby **DISMISSED with prejudice** for failure to state a claim under 28 U.S.C. § 1915A. The clerk is directed to enter judgment in favor of the defendants and close this case.

It is so ordered.

Dated at Hartford, Connecticut this 2nd day of August 2018.

　　　　　　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　　　　　　　Michael P. Shea
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge